# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Babcock v. Wallace*, 2012 IL App (1st) 111090

---

| | |
|---|---|
| Appellate Court Caption | DANIEL BABCOCK and BBS MANAGEMENT, Plaintiffs-Appellees, v. VERNON WALLACE, Defendant-Appellant (Yvonne Gibson, Defendant). |
| District & No. | First District, Second Division<br>Docket No. 1-11-1090 |
| Filed<br>Rehearing denied | June 5, 2012<br>July 17, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an alleged breach of a commercial real estate lease, the trial court properly entered judgment for plaintiffs on the award made pursuant to mandatory arbitration after denying defendant's motion to set aside the award on the ground that the award exceeded the monetary limit set by the mandatory arbitration program, since defendant failed to timely reject the award and demand a trial *de novo*, and in the absence of any errors of law when judgment was entered on the award, the trial court correctly denied defendant's postjudgment motion to set aside the award pursuant to section 2-1203 of the Code of Civil Procedure. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-M6-6002; the Hon. Camille Willis, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Mable Taylor, of Law Office of Mable Taylor, of Chicago, for appellant.

David A. Brauer, of McGrane Law Firm, of Chicago Heights, for appellees.

Panel

JUSTICE CONNORS delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1 An arbitration panel awarded $33,344 to plaintiffs Daniel Babcock and BBS Management, and the circuit court entered judgment in plaintiffs' favor on the award. Defendant Vernon Wallace appeals, arguing that the circuit court's judgment is void because the arbitrators' award exceeded the $30,000 limit set by the Cook County circuit court's mandatory arbitration program. We affirm.

¶ 2                                        BACKGROUND

¶ 3 This case arises out of a dispute over defendant's alleged breach of a commercial real estate lease, but the alleged facts of the case are immaterial for purposes of this appeal. Plaintiffs' original complaint sought damages in the amount of $24,414, so when plaintiffs filed their case it was assigned to the first district of the circuit court's municipal department. This department is divided into six geographical districts, and the first district (which covers the city of Chicago) hears general civil actions in which the amount in controversy is less than $30,000. See Cook Co. Cir. Ct. G.O. 2.3(a) (eff. May 2, 2011). For cases like this one where the amount sought is relatively small, the Illinois Supreme Court has created a nonbinding mandatory arbitration program. See Ill. S. Ct. R. 86 (eff. Jan. 1, 1994). Under this program, monetary disputes below a certain amount are subject to mandatory arbitration proceedings, which are governed by both supreme court and local rules. See Ill. S. Ct. R. 86(c) (eff. Jan. 1, 1994). In Cook County, the ceiling for mandatory arbitration is $30,000. See Cook Co. Cir. Ct. R. 18.3(b) (eff. Aug. 1, 2001).

¶ 4 Because plaintiffs sought less than $30,000, the case was assigned to an arbitration calendar and scheduled for arbitration. At some point prior to the arbitration hearing, however, plaintiffs amended their complaint to seek damages of $30,805, which exceeds the ceiling for mandatory arbitration. In this situation, plaintiffs have the right (but not the obligation) to have the case removed from the arbitration calendar and reassigned from the municipal department to the law division of the county department, which in the first district hears civil actions that seek damages in excess of $30,000. See Cook Co. Cir. Ct. G.O. 2.1(a) (eff. Aug. 1, 1996); see also *Eissman v. Pace Suburban Bus Division of the Regional Transportation Authority*, 315 Ill. App. 3d 574, 577-78 (2000) (citing Ill. S. Ct. R. 86(d),

-2-

Committee Comments). For whatever reason, plaintiffs did not ask the circuit court to remove the case from the arbitration calendar, so the case proceeded to arbitration as scheduled.

¶ 5    At the arbitration hearing, a split panel found in favor of plaintiffs on damages in the amount of $33,344, but awarded $0 on costs. One arbitrator dissented, though the record does not disclose the reason. Arbitration awards under this program are not binding, meaning that either party may reject the award within 30 days of the hearing and demand trial before the circuit court. See Ill. S. Ct. R. 93 (eff. Jan. 1, 1997). Defendant filed a rejection notice for the award but missed the 30-day deadline. Plaintiffs then moved the circuit court to strike defendant's attempted rejection on timeliness grounds and to enter judgment on the award. See Ill. S. Ct. R. 92(c) (eff. Jan. 1, 1994). Defendant opposed the motion, arguing that the arbitration award should be set aside because it exceeded $30,000, making the award void and relieving defendant of the obligation to file a rejection notice. The circuit court ultimately agreed with plaintiffs and entered judgment against defendant on the award. Defendant moved to set aside the judgment, but this too was denied.

¶ 6                                  ANALYSIS

¶ 7    Before we address the merits of this appeal, we must first mention the inadequacy of the parties' briefs in this case. Defendant's brief does not include an appendix with a table of contents for the record (see Ill. S. Ct. R. 341(h)(9) (eff. July 1, 2008); R. 342(a) (eff. Jan. 1, 2005)), and defendant's statement of facts and argument only occasionally direct us to relevant sections of the record (see Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008)). Moreover, there are pertinent facts in the record that defendant omits completely (see Ill. S. Ct. R. 341(h)(6) (eff. July 1, 2008)), foremost among them being that defendant did in fact file a rejection notice for the arbitration award but only after the deadline had already lapsed. (We will return to this interesting but unmentioned detail in our analysis.) Neither party includes the standard of review for any issue (see Ill. S. Ct. R. 341(h)(3), (i) (eff. July 1, 2008)), which as we will see is crucial to the outcome of this appeal, and both parties fail to cite numerous cases that are important to the issues raised. The parties' citations to authority are haphazard and incomplete. The issues implicated by this appeal are complex and of lasting importance, but defendant's brief cites no case law and only a few supreme court and circuit court rules. (Defendant does eventually cite some cases in his reply brief, in plain violation of Rule 341(h)(7).) This is inexplicable because all of defendant's briefs in the circuit court on these same issues cite and discuss a number of relevant cases, but defendant fails to even mention them in his opening brief. Plaintiffs' response brief is not much better, for although plaintiffs cite several relevant cases, the citations have no pincites (with a single exception, see plaintiffs' brief, page 8) and some quote the wrong case (see, *e.g.*, plaintiffs' brief, page 5, which misquotes *Cruz v. Northwestern Chrysler Plymouth Sales, Inc.*, 179 Ill. 2d 271 (1997) (plaintiffs attribute two quotations to *Cruz*, but the first quotation is actually from the appellate opinion and does not appear in the supreme court opinion)). We trust that mentioning this problem in our opinion will be sufficient to deter the attorneys involved from submitting similarly inadequate briefs in the future and to remind other appellate practitioners of the importance of adequate briefing.

-3-

¶ 8        With that said, on to the merits. There is no question that the arbitrators' award exceeded $30,000. Illinois Supreme Court Rule 92(b) (eff. Jan. 1, 1994) states that the arbitration award "may not exceed the monetary limit authorized by the Supreme Court for that circuit or county within that circuit, exclusive of interest and costs." Cook County's monetary limit, which was established by supreme court order in 1989 and is set forth in Cook County Circuit Court Rule 18.3 (eff. Aug. 1, 2001), is $30,000. So the arbitrators' award violated the rules of the mandatory arbitration program.

¶ 9        The real issues in this case are, first, what the effect of exceeding the monetary limit is and, second, what can or must be done about it by the parties and the circuit court. Defendant frames this as a matter of the arbitrators' jurisdiction or authority to act, asserting that because the arbitrators are only authorized to award up to $30,000, they had no jurisdiction to issue an award over that amount. In defendant's view, the arbitration award is therefore void and unenforceable by the circuit court, making a rejection notice unnecessary. Defendant's position is on the right track, but this case is significantly more complex than defendant makes it out to be.

¶ 10       To begin with, supreme court rules "are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995); accord *Applebaum v. Rush University Medical Center*, 231 Ill. 2d 429, 447 (2008); *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 116 (2004). Indeed, strict compliance with supreme court rules is generally mandated (see *Stokovich*, 211 Ill. 2d at 166), although some rules require only substantial compliance (see, *e.g.*, *People v. Dominguez*, 2012 IL 111336, ¶ 22 (analyzing Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001))). Whether Rule 92(b) calls for substantial or strict compliance with the monetary limit is a question of first impression, which we review *de novo*. See *Dominguez*, 2012 IL 111336, ¶ 13. We interpret supreme court rules in accordance with ordinary rules of statutory construction:

"The primary objective is to ascertain and give effect to the rule's drafters' intent, the surest and most reliable indicator of which is the language of the rule itself, given its plain and ordinary meaning. [Citation.] In determining the plain meaning of the rule's terms, we consider the rule in its entirety, keeping in mind the subject it addresses and the apparent intent of the drafters in enacting it. [Citation.] Where the language of the rule is clear and unambiguous, we must apply it as written, without resort to extrinsic aids to statutory construction. [Citation.] We interpret the rule so that no part of it is rendered meaningless or superfluous and we do not depart from the plain language of the rule by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *Id.* ¶ 16.

¶ 11       The plain language of the rule is unambiguous: the arbitrators "may not exceed the monetary limit," and the rule contains no language that we could reasonably interpret to mean that the arbitrators might be allowed in some circumstance to make an award that exceeds the limit. *Cf. id.* ¶¶ 15-19 (noting that Rule 605(c) contains the term "substantially"). We therefore must conclude that Rule 92(b) demands strict compliance with the monetary limit.

¶ 12       But does the arbitrators' failure to comply with Rule 92(b) deprive them of jurisdiction and render their award void? This is unlikely, given that if a tribunal has properly gained jurisdiction over a matter, then the failure of the parties or the tribunal itself to comply with a supreme court rule does not automatically divest it of jurisdiction. See, *e.g.*, *Stokovich*, 211 Ill. 2d at 118-19 (finding that failure to comply with Rule 19 does not deprive the appellate court of jurisdiction to address a constitutional issue); accord *McMichael v. Michael Reese Health Plan Foundation*, 259 Ill. App. 3d 113, 115 (1994) ("[J]urisdiction is vested in this court pursuant to Supreme Court Rule 308 and there is no basis for finding that a party's failure to comply with Supreme Court Rule 19 divests this court of jurisdiction to consider an appeal."). Indeed, a tribunal's failure to comply with a supreme court rule ordinarily results only in reversal and remand for further proceedings. See, *e.g.*, *Dominguez*, 2012 IL 111336, ¶ 15 ("[F]ailure to give [Rule 605(c)] admonitions will result in remand to the trial court for proceedings in accordance with Rule 605(c)."). Although an arbitration panel is not a "tribunal" in the full judicial sense, principles of jurisdiction have been applied to such panels in this context. See *Eissman*, 315 Ill. App. 3d at 578.

¶ 13      Defendant's position relies exclusively on *Eissman* for the proposition that the arbitration panel's action deprived it of jurisdiction and rendered its award void. In *Eissman*, the circuit court granted the plaintiff's motion to remove the case from the arbitration calendar and transfer the case to the law division because her damages exceeded the monetary limit. The order, however, was never sent to the arbitration panel. The panel heard the case and the arbitrators entered an award in the defendant's favor after the plaintiff, believing that the case had been transferred, did not appear at the arbitration hearing. The circuit court later found that the arbitration award was lawful and entered judgment on the award. See *id.* at 575-77. We reversed, holding that the arbitrators lost their authority to hear the case when the circuit court entered the transfer order, rendering the award void. See *id.* at 578. Because the award was void, the circuit court's judgment order on the award was also void. See *id.* As we noted in *Eissman*, this result was largely driven by the effect of an order given by a tribunal that lacks jurisdiction over a matter:

          "While the term 'jurisdiction' may not be strictly applicable to the arbitrators, the term may be used to refer to their authority to act, and the terms 'jurisdiction' and 'authority' have been used interchangeably in certain contexts. [Citations.] Some Illinois decisions have indeed referred to arbitrators' authority as 'jurisdiction.' [Citation.] In any event, decisions by a tribunal lacking jurisdiction of the parties or of the subject matter, or by a tribunal lacking the inherent power to enter the particular order involved, are void *ab initio*. [Citations.]" *Eissman*, 315 Ill. App. 3d at 578.

¶ 14      The problem with defendant's reliance on *Eissman* as precedent for this case is that there is a significant difference between a void order like the one in *Eissman* and an order that is merely voidable. "[A] judgment or order is void where it is entered by a court or agency lacking personal jurisdiction, subject-matter jurisdiction, or the inherent power to enter the particular judgment or order, or where the judgment or order is procured by fraud." *Juszczyk v. Flores*, 334 Ill. App. 3d 122, 125 (2002). In contrast, "[a] voidable judgment is a judgment entered erroneously by a court having jurisdiction." *Id.* at 126. The difference between voidable and void judgments distinguishes this case from *Eissman*. In that case, the problem

was that the arbitration panel had no jurisdiction over the case because the circuit court entered the transfer order before the case went to arbitration. See *Eissman*, 315 Ill. App. 3d at 578. The arbitrators consequently never had the authority to hear the case at all, much less render an enforceable award. In contrast, it is undisputed here that the case was properly referred to arbitration. Although defendant argues that plaintiffs should have asked to remove the case from the arbitration calendar because they sought more than $30,000, plaintiffs had no obligation to do so. See *id.* at 577-78. The case was therefore properly before the arbitrators, so the award is not void even though it exceeded the monetary limit. *Cf. Jordan v. Bangloria*, 2011 IL App (1st) 103506, ¶¶ 10-11 (finding an arbitration award issued without due notice is voidable, not void).

¶ 15       Still, because the award exceeded the monetary limit it was erroneous and therefore voidable, which brings us to the second question: what can be done about it? The parties brought this issue to the circuit court's attention when plaintiffs moved for judgment on the award and defendant asked the circuit court to set the award aside. The circuit court declined and entered judgment on the award in plaintiffs' favor because defendant failed to file a timely rejection notice, which the circuit court believed was defendant's only legal option for contesting the award.

¶ 16       We have long held that rejection is the "sole intended remedy from an award." (Internal quotation marks omitted.) *Hinkle v. Womack*, 303 Ill. App. 3d 105, 115 (1999); accord *Kolar v. Arlington Toyota, Inc.*, 286 Ill. App. 3d 43, 47 (1996). In *Cruz v. Northwestern Chrysler Plymouth Sales, Inc.*, 179 Ill. 2d 271, 279 (1997), the supreme court explained the limitations on the circuit court's authority in mandatory arbitration cases:

"Under our rules for mandatory court-annexed arbitration, the role of the circuit court is limited. Where, as here, a case is subject to mandatory arbitration and is submitted to a panel of arbitrators for hearing, the responsibility for administering oaths, ruling on the admissibility of evidence, and, most importantly, deciding the law and facts of the case is expressly vested in the arbitrators. [Citation.] The circuit court plays no role in adjudicating the merits of the case. Authority for making a determination in favor of one party or the other rests exclusively with the arbitrators, and Rule 92(b) expressly states that the arbitration panel's award 'shall dispose of all claims for relief.' [Citation.]

Once the arbitration panel has made its award, the parties must accept or reject the award in its entirety. If none of the parties file a notice of rejection of the award and request to proceed to trial within the time specified under the rules, *the circuit court has no real function beyond entering judgment on the award.* [Citation.] Although the court can correct an 'obvious and unambiguous error in mathematics or language' [citation], it cannot modify the substantive provisions of the award or grant any monetary relief in addition to the sums awarded by the arbitrators." (Emphasis added.)

¶ 17       For these reasons, parties who fail to timely reject an arbitration award or who fail to appear at arbitration hearings are often debarred from contesting the award at all (see, *e.g.*, *Liebovich Steel & Aluminum Co. v. Advance Iron Works, Inc.*, 353 Ill. App. 3d 311, 315 (2004); *Hinkle*, 303 Ill. App. 3d at 113-15), although the circuit court may in its discretion extend the time for filing the rejection notice upon a showing of good cause (see *Ianotti v.*

-6-

*Chicago Park District*, 250 Ill. App. 3d 628 (1993)). Because the mandatory arbitration program is intended to provide "a feasible vehicle for an early[,] economical and fair resolution of monetary disputes" (Ill. S. Ct. Rs., Mandatory Arbitration, Introductory Comments), limiting a party's ability to contest an award to filing a rejection notice ensures that the process will not be unnecessarily prolonged by attempts to dispute the minutiae of an award. Both judicial and private resources are thereby conserved.

¶ 18        But what about a situation such as this where the arbitrators exceed their authority by issuing an award over the monetary limit? If this were an ordinary arbitration award, then the aggrieved party could have had the award vacated as a matter of course pursuant to section 12 of the Illinois Uniform Arbitration Act (710 ILCS 5/12 (West 2010)). The usual rules that govern arbitration, however, do not apply to the mandatory arbitration program. See 735 ILCS 5/2-1006A (West 2010). The supreme court rules themselves are silent on this matter, but the committee comments address this situation. In comparing the mandatory arbitration program with arbitration under the Illinois Uniform Arbitration Act, the committee comments to Rule 93 explain:

> "Under this section of the [Uniform Arbitration Act], a party may apply to the court to vacate the award where the award was procured by corruption, fraud or other undue means; or that an arbitrator was guilty of misconduct prejudicing the rights of any party; or the arbitrators exceeded their powers. The Committee urges the interpretation that *such alleged conduct should be addressed to the court for redress in a petition independent of the course of the proceedings in the action subsequent to the award; that the sole remedy in relation to the award, as an intermediate mechanism to resolve the dispute, should be to avail oneself of the right to a trial.*" (Emphasis added.) Ill. S. Ct. R. 93, Committee Comments.

In a later paragraph, the comments quote an explanatory note to the Pennsylvania rules (which the Illinois program is partly modeled on), noting that even in the event of corruption or misbehavior by the arbitrators:

> " 'The Rules do not continue the practice of petitioning to set aside an award for corruption or misbehavior. Hearings or depositions on the petition proceedings could delay the proceedings. As a practical matter, if the fraud or corruption were proved, remand and the appointment of a new panel could be the only relief. *Trial de novo is preferable since it expedites the proceedings.*' " (Emphasis in original.) Ill. S. Ct. R. 93, Committee Comments, ¶ (a).

It is abundantly clear from the committee comments that the supreme court intended for rejection to be the sole remedy in all situations, even if the award might be voidable because of corruption or, as in this case, because the arbitrators exceeded their powers. In the context of mandatory arbitration, the supreme court has elected to favor efficiency of the proceedings over a detailed inquiry into the legitimacy of the arbitration award in order to streamline the process and conserve resources.

¶ 19        It is interesting to note that this case represents the exact situation that the supreme court wanted to prevent by making rejection the sole remedy for contesting an award. Defendant had the opportunity to reject the award and demand trial but failed to file the rejection notice

on time. Defendant could have asked the circuit court to extend the time for filing the notice, but he did not. Instead, defendant decided to try an end run around the rejection-notice requirement, arguing that he was not obligated to file the notice at all because the award was void and could therefore be attacked at any time. Litigating this issue took six months to resolve from the date that the arbitrators rendered their award, and even after the circuit court entered judgment on the award in favor of plaintiffs, defendant filed another motion that took an additional five months to resolve. Had defendant exercised his right to reject the award and demand trial in a timely fashion as the rules contemplate, nearly a year's worth of judicial and private resources could have been saved.

¶ 20    So the circuit court was correct to enter judgment on the award, even though it was obvious that the award exceeded the monetary limit. In fact, based on the supreme court's admonitions in *Cruz*, the circuit court probably should have entered judgment as soon as plaintiffs moved for judgment and the circuit court determined that defendant had not rejected the award in time. Any arguments that defendant may have had about the validity of the award were premature and should have been saved for a postjudgment petition. The comments indicate that an aggrieved litigant who fails to reject the award and demand trial *de novo* may still attempt to vacate an arbitration award for any of the usual reasons, but the intent of the rules appears to be that such an attempt come only "in a petition independent of the course of the proceedings in the action *subsequent to* the award." (Emphasis added.) Ill. S. Ct. R. 93, Committee Comments, ¶ (a).

¶ 21    The last issue, then, is whether the trial court should have vacated the judgment on the award when defendant asked it to. It appears from the record that defendant filed at least two motions attacking the judgment. Defendant first filed a prejudgment "Motion to Set Aside Arbitration Award," and then, after the circuit court denied that motion and entered judgment on the arbitration award, defendant filed a "Motion for Reconsideration of Defendant's Motion to Set Aside Judgment on Award and Arbitration Award." (Despite the title on the motion to reconsider, the record does not contain an original motion of that title.) Both motions raised the issue of voidness due to exceeding the monetary limit. The trial court was correct to deny the first motion because, as we have said, a challenge to the arbitration award in this particular situation must wait until after judgment has been entered.

¶ 22    The harder question is what to do about the second motion. Although it is styled a motion to reconsider, the motion claims (though not until seven pages in) that defendant is attacking the award pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). That is plainly wrong, given that a section 2-1401 petition is a collateral attack against a judgment only after more than 30 days, and defendant filed his motion only 19 days after the circuit court entered judgment on the award. See 735 ILCS 5/2-1401(a) (West 2010). Instead, a motion pursuant to section 2-1203 (735 ILCS 5/2-1203 (West 2010)) is the proper means of attempting to vacate a judgment after less than 30 days. (As a side point, a third option for attacking a judgment is by moving to set aside a default under section 2-1301(e) (735 ILCS 5/2-1301(e) (West 2010)), but we do not think that this situation is a "default" within the meaning of section 2-1301(d). It is important here to note the difference between this case and *Jordan*, 2011 IL App (1st) 103506, which also dealt with a voidable order. In *Jordan*, the defendant filed a timely rejection notice but was debarred from rejecting

the arbitration award because he defaulted by failing to appear at the arbitration hearing without good cause. Because the defendant in *Jordan* filed a rejection notice and the judgment was a result of his default, he could invoke Illinois Supreme Court Rule 91 (eff. June 1, 1993) to oppose debarment and vacate the judgment under section 2-1301(e), even though he was ultimately unsuccessful. *Cf. Jordan*, 2011 IL App (1st) 103506, ¶¶ 4-6, 12-21. Unlike the defendant in *Jordan*, defendant here does not have a similar option under Rule 91 because he both appeared at the arbitration hearing and failed to file a rejection notice.)

¶ 23    This is not idle semantics. The standard of review and burden of proof for a section 2-1203 motion and a section 2-1401 petition are very different. There are no special requirements for requesting relief under section 2-1203, and the circuit court has broad discretion whether such a motion should be granted. On appeal we review the trial court's decision only for abuse of that discretion, subject only to "an inquiry as to whether substantial justice is being done between the litigants and whether, under the circumstances of the case, it is reasonable to compel the other party to go to trial on the merits." (Internal quotation marks omitted.) *Mryszuk v. Hoyos*, 228 Ill. App. 3d 860, 863 (1992); *cf. In re Haley D.*, 2011 IL 110886, ¶ 57 (discussing the similar standard for relief under section 2-1301(e) (735 ILCS 5/2-1301(e) (West 2010)). In contrast, "[a] party seeking to set aside a final order or judgment under section 2-1401(a) is required to show by a preponderance of the evidence not only the existence of a meritorious claim or defense in the original action, but also due diligence in pursuing the claim or defense in the circuit court as well as due diligence in presenting the petition for relief under section 2-1401(a)." *Haley D.*, 2011 IL 110886, ¶ 58. Importantly for situations like this that involve voidable orders, "[t]he only time a meritorious claim or defense or due diligence need not be established in a proceeding under section 2-1401(a) is when the order or judgment at issue is attacked as void." *Id.*

¶ 24    If defendant's motion here is indeed a section 2-1401 petition as he claimed, then defendant would bear a heavier burden than he would for a section 2-1203 motion. Yet the supreme court recently dealt with a remarkably similar issue in *Haley D.* Although that case dealt with a motion to set aside a default judgment under section 2-1301 rather than a postjudgment motion under section 2-1203, there was also confusion regarding the respondent's burden of proof and what type of relief was available to him. See *id.* The respondent, erroneously (but apparently justifiably) believing that relief under section 2-1301 was unavailable, petitioned for relief under section 2-1401. See *id.* Because a final order had in fact not been entered, however, relief under section 2-1401 was legally unavailable because such relief is only available more than 30 days after final judgment. See *id.* ¶ 66. The supreme court held that the circuit court should have considered the motion under section 2-1301 rather than section 2-1401 despite the respondent's decision to invoke section 2-1401 in his request for relief. See *id.* The supreme court reasoned that

> "the character of the pleading should be determined from its content, not its label. Accordingly, when analyzing a party's request for relief, courts should look to what the pleading contains, not what it is called. [Citation.] That is particularly appropriate here, where it is apparent, as a matter of law, that a motion should have been considered under section 2-1301(e) rather than section 2-1401(a), insistence by this court on evaluating the lower court's judgments in terms of the standards governing section 2-1401(a) petitions

would only 'sow confusion' in an area of the law where practitioners and trial courts are already confused enough. [Citation.]" *Id.* ¶ 67.

¶ 25    Based on *Haley D.* and the timing of defendant's motion and its content, we must treat the motion as a motion to vacate the judgment under section 2-1203 rather than a petition for relief under section 2-1401 because defendant filed it less than 30 days after the circuit court entered judgment. The circuit court, however, stated as follows when denying defendant's motion:

"The problem with this case is that it was never brought to the court's attention, that the amount sought *** exceeded the $30,000 limit and/or there was not a timely motion filed to correct any errors or mistakes in the arbitration award or to reject or set aside the arbitration amount.

There has to be some finality to–to these types of cases, and I believe that the law indicates that 30 days after the arbitration award is it."

¶ 26    It appears from this statement that the circuit court denied the motion because it believed that defendant's failure to reject the award absolutely foreclosed any relief. This is not entirely correct: defendant does have the option of seeking to vacate the award after judgment. Yet the circuit court was right to deny defendant's motion because the relief that he sought was premature at that point. The committee comments to Rule 93 expressly urge that any attempt to attack the judgment, other than by rejecting the award, "should be addressed to the court for redress in a *petition independent of the course of proceedings* in the action subsequent to the award." (Emphasis added.) Ill. S. Ct. R. 93, Committee Comments, ¶ (a). A motion to set aside the award under section 2-1203 is part of the original proceedings and is a means of allowing the circuit court to revisit its judgment order while it still has jurisdiction over the matter (see, *e.g.*, *Brigando v. Republic Steel Corp.*, 180 Ill. App. 3d 1016, 1020 (1989)), so it therefore seems that such a motion is not what the supreme court envisioned as the proper vehicle for attacking an award in which the arbitrators have exceeded their powers. In contrast, a petition under section 2-1401 is collateral to the original proceedings. See 735 ILCS 5/2-1401(b) (West 2010). Importantly, matters outside of the original record may be introduced by and considered in a section 2-1401 petition (see 735 ILCS 5/2-1401(b) (West 2010)), which would allow the circuit court to consider evidence regarding the conduct of the arbitrators that may not be in the record from an arbitration hearing. This is markedly different from a motion to vacate under section 2-1203, which "is designed to alert the trial court to errors it has committed and afford an opportunity for their correction." *Dolido v. Zenith Radio Corp.*, 194 Ill. App. 3d 268, 271 (1990). As we have said, the circuit court had no option in this situation but to enter judgment on the arbitration award, so it committed no errors that needed correction.

¶ 27    Based on our reading of the rules and their comments, the only recourse for a litigant who fails to timely reject an arbitration award is to petition for relief under section 2-1401. (But it should not be forgotten that, pursuant to *Ianotti*, the circuit court has the discretion to extend the period for filing the rejection notice if there is good cause.) This makes sense given that the clear intent of the mandatory arbitration program is to maximize judicial efficiency, minimize litigant costs, and deliver swift results in low-level monetary disputes.

Although this result might appear strange given that section 2-1203 is designed to allow the circuit court to correct legal mistakes at the first opportunity and thus save judicial resources, Rule 86(e) states that the mandatory arbitration rules take precedence over ordinary rules of the Code of Civil Procedure. See Ill. S. Ct. R. 86(e) (eff. Jan. 1, 1994). In the limited context of mandatory arbitration, the rules put efficiency and finality over any concerns about the details of an award or the actions of the arbitrators. In the event that the arbitrators exceed their powers, the rules give litigants an easy remedy: reject the award. But those litigants who fail to timely reject the award must content themselves with bringing the matter to the circuit court's attention in a petition in a separate proceeding under section 2-1401.

¶ 28     None of this should be taken as tacit approval of the arbitrators' failure to adhere to the clear requirements of the supreme court and local rules that govern mandatory arbitration. Although defendant's recourse against the award in this case is limited to a section 2-1401 petition because he failed to timely reject it, the arbitrators are quasi-judicial officers who are subject at least in part to the Code of Judicial Conduct (see Ill. S. Ct. R. 87(c) (eff. Feb. 1, 2007)), and are supervised by the arbitration program administrator and the supervising judge for arbitration (see Cook Co. Cir. Ct. R. 18.1 (eff. Aug. 1, 2001)). Any issues related to the conduct of the arbitrators can, if necessary, be brought to the attention of these officers or the circuit court. See Ill. S. Ct. R. 93, Committee Comments, ¶ (a); Cook Co. Cir. Ct. R. 18.4(f) (eff. Feb. 24, 2003).

¶ 29                                 CONCLUSION

¶ 30     In sum, despite the fact that the arbitrators exceeded their powers by rendering an award over the monetary limit, the circuit court was correct to deny defendant's motion to set aside the arbitration award and to enter judgment on the award. Further, because the circuit court made no errors of law when entering judgment on the arbitrators' award, the circuit court was correct to deny defendant's postjudgment motion to set aside the award pursuant to section 2-1203. The circuit court's judgment must therefore be affirmed.

¶ 31     Affirmed.