2020 IL App (1st) 182455-U

No. 1-18-2455

Third Division
May 20, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ALFREDO CASTILLO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 L 2476 |
| | ) | |
| MARCOS MORAN, | ) | Honorable |
| | ) | Jerry A. Esrig, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Ellis and Justice Howse concurred in the judgment.

**O R D E R**

¶ 1    *Held*:  Circuit court's judgment affirmed where plaintiff failed to establish that the court erred in denying leave to amend the complaint and presumption stands that the court's discretion was not abused. Plaintiff's request for remand to increase the mandatory arbitration award is denied where plaintiff failed to reject the award prior to judgment being entered and failed to move to vacate the order in the circuit court.

¶ 2    This appeal arises from a complaint filed by plaintiff, Alfredo Castillo, former tenant of property foreclosed upon against defendant, Marcos Moran, buyer of the foreclosed property, for alleged violations of the Chicago Municipal Code and various state and federal statutes governing treatment of tenants during foreclosure proceedings and subsequent property

transfer. The parties participated in mandatory arbitration from which an award of $10,600 was entered by the Circuit Court of Cook County as a final judgment in the case. Plaintiff now appeals that judgment, arguing that the circuit court erred in denying him leave to amend his complaint to perfect counts that were dismissed prior to the mandatory arbitration proceeding, and erred in entering judgment on the arbitration award. For the foregoing reasons, we affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Complaint

¶ 5        On March 9, 2017, plaintiff filed a 72-page, 10-count *pro se* complaint, with 60 additional pages of exhibits. The complaint alleged both criminal and civil violations, referenced doctrines of equity ("illegal enrichment" and "unclean hands"), and recited voluminous statutory language. Specifically, plaintiff's complaint against defendant claimed: (1) extortion, (2) disorderly conduct and harassment, (3) failure to give notice as required by law, (4) costs for time and travel, court and legal fees, and loss of wages, (5) illegal lockout on December 4, 2014, (6) illegal lockout on May 9, 2015, (7) reimbursement of security deposit, (8) relief for tenant in foreclosure relocation, (9) reimbursement for "sweat equity," and (10) trespass on May 9, 2015. The complaint sought $21,200 under Chicago Municipal Code § 5-14-050 (amended April 15, 2015),[1] reimbursement of his security deposit with statutory interest, $7,000 for supplies and $5,200 for labor expended as sweat equity for improvements on the property, and other relief the court deemed just.

_____

[1]Plaintiff listed Ordinance § 5-14-040, in his complaint and specified paragraph f as the basis for his claim, but that section does not have a paragraph f. The following section, which references the relief sought by plaintiff, does and we presume he intended to cite § 5-14-050.

¶ 6        The complaint set forth the following factual allegations: Plaintiff was one of the tenants at 2701 South Avers Avenue in Chicago, Illinois (the Property). He had a 60-month lease with Lizet Ruiz set to terminate in December 2018. Four months into the lease, Nationstar Mortgage, LLC (Nationstar) sought to foreclose the property and filed suit against Ruiz.[2] Judgment of foreclosure was entered on October 30, 2013 and the property was sold to defendant at auction on February 3, 2014. Plaintiff filed an appearance in the foreclosure proceeding on May 29, 2014, after the sale had already concluded.

¶ 7        After the sale, plaintiff was contacted by defendant via a hand-delivered letter left at the property. The letter demanded payment of $800 in rent or vacation of the premises. On June 9, 2014, plaintiff spoke with defendant over the phone to discuss the letter. During the call, defendant allegedly stated he would enter the property to do a physical inspection with or without plaintiff's consent. Plaintiff filed a petition to intervene in the mortgage foreclosure on June 25, 2014. Plaintiff's petition was denied and an order confirming the sale was entered on August 20, 2014.

¶ 8        On March 9, 2015, defendant filed a lawsuit[3] for possession of the property against plaintiff and the Saldana family as sublessees of the property's first floor. An *ex parte* order for possession in that case was entered on May 22, 2015. On August 29, 2015, plaintiff allegedly vacated the property and wrote letters informing defendant and his counsel of the same, requested a time to do a final walkthrough and to turn over the keys. Plaintiff alleged that his initial letter, sent on the same day he moved, went unanswered. His second letter sent on October 1, 2015, was delivered via certified mail to defendant's counsel, but he still received

---

[2]See Cook County Case No. 2013CH09274.
[3]See Cook County Case Nos. 2015 M1 704538 and 2015 M1 704539.

no response. Plaintiff then filed a complaint with the City of Chicago's Department of Consumer Protection on November 12, 2015, prior to filing a complaint in the circuit court.

¶ 9                                B. Motions to Dismiss

¶ 10        Defendant responded with two separate motions to dismiss. The first motion, filed on April 25, 2017, attacked counts 1 and 2 of the complaint for failing to state a claim as the alleged violations of the Criminal Code did not create a civil right of action. Counts 5, 6, and 10, were challenged for failing to state a claim as the alleged harm affected non-parties, i.e. the Saldanas, rather than plaintiff directly. Furthermore, defendant asserted that those three counts, which related to removal of the entrance gate, did not constitute a lock-out or trespass as the gate was located in the common area of the property and accessible to the owner and tenants. Count 4 was challenged for failing to state any theory of a cause of action creating a duty for defendant to reimburse plaintiff for his expenses in the related court cases (intervening in the mortgage foreclosure and defending in forcible entry and detainer actions). Additionally, defendant argued that claims for damages, such as fees and costs, should have been addressed in the court case in which they arose rather than in the present case. Lastly, the motion asserted that plaintiff had failed to cite any action at law, contract, or agreement that entitled plaintiff to reimbursement for his alleged sweat equity in the property. Thus, defendant argued count 9 should be dismissed for failure to state a claim. Defendant's second motion to dismiss, filed on May 17, 2017, sought dismissal of all counts with prejudice. Defendant argued that all claims arose from plaintiff's alleged tenancy at the property, but defendant asserted that the proceedings in the forcible entry and detainer action were dispositive in showing that plaintiff was not a tenant.

¶ 11        On August 18, 2017, the court issued a written order denying defendant's second motion to dismiss. The court noted that defendant's forcible entry and detainer action was used to determine whether defendant was entitled to possession of the property, whereas the claims raised by plaintiff in the present action related to defendant's alleged wrongful conduct as a landlord. Although the court recognized there was some factual overlap between the two cases, the court disagreed with defendant that plaintiff's claims were barred under the doctrine of *res judicata* as the two cases did not arise from a single group of operative facts.

¶ 12        On October 10, 2017, the court entered an order transferring the case from the law division to the municipal division, stating that the value of the case was below the requisite mandatory threshold. The order also summarily granted defendant's motion to dismiss counts 1, 2, 4, 5, 6, and 10, but denied the motion as to count 9. No written order explaining the court's ruling or transcript from the motion hearing was included in the record on appeal. The case was transferred back to the law division on November 13, 2017 on plaintiff's motion. The court order transferring the case also addressed discovery disputes and noted that it granted plaintiff's motion to vacate the October 10 order, but only as to the transfer. Plaintiff's motion to vacate the partial dismissal was denied.

¶ 13                              C. Further Pre-Trial Proceedings

¶ 14        Defendant moved for summary judgment on February 13, 2018 reiterating his argument that plaintiff's claims were barred by the orders in a previous case in which plaintiff's positions were contradictory to his present claims. Defendant also asked the court to apply the parol evidence rule and find that the copy of a lease submitted by plaintiff did not support plaintiff's claims that he was a tenant of the property and plaintiff could not assert an alleged verbal

understanding in regards to his tenancy in the basement apartment and the alleged sublease with the Saldanas. The motion was entered and continued.

¶ 15      On February 28, 2018, the court entered an order referring the matter to the Commercial Calendar Mandatory Arbitration Program. The order set a case management hearing for May 2, 2018 and a deadline for judgment on the award or status of rejection for September 12, 2018. The day before the scheduled case management hearing, plaintiff moved again to vacate the order granting dismissal of Counts 1, 2, 4, 5, 6, and 10. Plaintiff simultaneously sought leave to amend his complaint. The circuit court denied the motion to vacate and denied leave to amend on May 22, 2018, finding that the motion was untimely filed and lacking as no copy of the proposed amended complaint was supplied. Plaintiff re-filed his motion for leave to amend with his amended complaint on May 25, 2018. The court ruled that plaintiff was "not given leave to file an amended complaint" and "[t]o the extent that an amended complaint [was] filed by plaintiff," it would only be considered as an exhibit until a hearing was conducted on plaintiff's motion for leave to amend.

¶ 16      On June 29, 2018, the parties participated in a mandatory arbitration on counts 3, 7, 8, and 9 of the complaint. The arbitrator found in favor of defendant on Count 3, "Failure to Give Notice," and Count 7, "Security Deposit." However, the arbitrator found in favor of plaintiff on Count 8, "Tenant in Foreclosure Relocation Relief" and awarded $10,600. Plaintiff withdrew Count 9, "Reimbursement of Tenant Investment in Dwelling 'Sweat Equity.'"

¶ 17      After the arbitration was concluded, plaintiff re-filed his motion for leave to file an amended complaint *instanter*. On October 17, 2018, the circuit court entered an order adopting the arbitration award, noting that neither party had rejected the award, and summarily denied plaintiff's renewed motion to file an amended complaint. This appeal followed.

¶ 18                                 II. ANALYSIS

¶ 19                              A. Briefs on Appeal

¶ 20       Prior to reaching the merits of this case, we must address a few preliminary matters concerning the briefs on appeal. First, we note that plaintiff's brief suffers from several deficiencies. Although we recognize that plaintiff has elected to proceed *pro se*, his status does not excuse non-compliance with our court rules. See *Fryzel v. Miller*, 2014 IL App (1st) 120597, ¶ 26 (*pro se* litigant is not relieved of obligation to comply with the appellate practice rules and failure to comply is not excused). Plaintiff's brief attempts to comply with the required organizational structure, setting out appropriate headers for his points and authorities, nature of the case, issues presented, statement of jurisdiction, statement of facts, argument, and conclusion. He identifies four issues presented on appeal asserting, in essence, that the circuit court erred in denying his motion for leave to amend his complaint and erred by confirming the arbitration award. Nevertheless, his "nature of the case" section simply enumerates the violations alleged in his complaint without informing the court of the general area of the law in which the case falls, whether there was a jury trial, and whether there is a pleading question. See Ill. S. Ct. R. 341(h)(2) (eff. May 25, 2018).

¶ 21       Plaintiff's statement of the facts also provides only a brief overview of the procedural history of the case in the circuit court without laying out the facts necessary to understand the identified issues. See Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018). His 16-page argument section contains barely any discussion of the issues. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Approximately half of the argument section is block-quoted statutory text. Another four pages are filled with consecutive quotations from case law or statements of law with legal citation, but without analysis. One of these four pages cites solely to cases outside of our jurisdiction.

Finally, there are several pages that are an almost verbatim copy of sections from plaintiff's proposed first amended complaint and motion for leave to amend.

¶ 22 "[T]he rules of procedure for appellate briefs are rules, not mere suggestions." *Longo Realty v. Menard, Inc.,* 2016 IL App (1st) 151231, ¶ 18. Moreover, this court is "not a depository into which the burden of research may be dumped." *Campbell v. Wagner,* 303 Ill. App. 3d 609, 613 (1999). We are not obligated to entertain an appeal where the appellant has dumped the burden of argument and research on this court. *U.S. Bank v. Lindsey,* 397 Ill. App. 3d 437, 457 (2009). We are entitled to the benefit of clearly defined issues with pertinent authority cited and cohesive legal arguments. *Id.* When a violation of the rules interferes with our review of the issues, we have the discretion to strike a brief for its failure to comply. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 10. Notwithstanding the deficiencies, we exercise our discretion to proceed and to address those of plaintiff's assertions which we can discern from his brief and the record.

¶ 23 Additionally, we note that defendant has not filed a response brief. Therefore our review is governed by *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), in which our supreme court "set forth three distinct, discretionary options a reviewing court may exercise in the absence of an appellee's brief: (1) it may serve as an advocate for the appellee and decide the case when the court determines justice so requires, (2) it may decide the merits of the case if the record is simple and the issues can be easily decided without the aid of an appellee's brief, or (3) it may reverse the trial court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record." *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009) (citing *Talandis*, 63 Ill. 2d at 133). The issues presented here are

simple and can be decided without the aid of defendant's response brief. Accordingly, we proceed to the merits.

¶ 24                                    B. Leave to Amend

¶ 25        Plaintiff contends that he should have been granted leave to amend his complaint as there was "newly discovered evidence" that was not previously presented and would have warranted the court to reconsider its dismissal. He argues that the circuit court's order dismissed Counts 1, 2, 4, 5, 6, and 10 without prejudice which constituted an interlocutory order. Accordingly, he urges that the circuit court should be required to reconsider its dismissal because "[c]ourts in Federal 7th District are authorized to reconsider interlocutory orders where there has been a controlling or significant change in the facts since the submission of the issue to the court."

¶ 26        Courts have broad discretion in liberally allowing amendments of pleadings to foster the policy of resolving controversies on their merits. *Cook v. Board of Education of Edwardsville Community Unit School District No. 7, Madison County*, 126 Ill. App. 3d 1013, 1019 (2010). However, this does not mean that plaintiffs have an absolute and unlimited right to amend. *Ruklick v. Julius Schmid, Inc.*, 169 Ill. App. 3d 1098, 1113 (1988). We review a trial court's decision to grant or deny a motion for leave to amend a pleading under the abuse of discretion standard. *Selcke v. Bove*, 258 Ill. App. 3d 932, 937 (1994). Generally, it is presumed that the circuit court has not abused its discretion and the burden of establishing error by the circuit court rests with the appellant. *Flynn v. Vancil*, 41 Ill. 2d 236, 241 (1968); *Chicago Title & Trust Co. v. First Arlington National Bank*, 118 Ill. App. 3d 401, 413 (1983).

¶ 27        In determining whether the circuit court properly exercised its discretion, we consider "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the

proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." (Internal quotation marks omitted.) *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App.3d 1, 7 (2004). Here, plaintiff has failed to meet his burden and has forfeited his claim by failing to provide a clear explanation, supported by citation to appropriate authority, as to why the circuit court's denial of leave to amend was an abuse of discretion. Plaintiff's argument consists largely of a recitation of the governing Code of Civil Procedure on amendments. He fails to even identify the appropriate standard of review and alludes to "newly discovered evidence" without explanation of what that entails. Additionally, his brief includes sections directly from his proposed amended complaint and motion for leave to amend without analysis. As we have already noted, the appellant may not dump the burden of argument and research on the court. If an appellant fails to provide such support, they forfeit review of those points. See *People v. Phillips,* 215 Ill. 2d 554, 565 (2005) (issue forfeited where defendant raised it but failed to make any argument or cite to relevant authority). As such, we find that plaintiff has failed to meet his burden and forfeited his claim here.

¶ 28                                    C. Mandatory Arbitration Award

¶ 29        Plaintiff next contends on appeal that the arbitrator failed to comply with and enforce the maximum statutory relief pursuant to the Chicago Municipal Code. He further asserts that the circuit court erred in entering the arbitration award. He therefore asks this court to remand the case and direct the circuit court to correct the judgment amount. However, as a matter of law, plaintiff's failure to reject the arbitration award limits the relief to which he is entitled on appeal. Plaintiff cannot now complain that the award was incorrect as rejection of the award is the "intended remedy" for an improper arbitration award. See *Babcock v. Wallace*, 2012 IL App (1st) 111090, ¶ 16. Our supreme court addressed this issue in *Cruz v. Northwestern*

*Chrysler Plymouth Sales, Inc.,* 179 Ill. 2d 271, 279 (1997), holding that the role of the circuit court is limited where mandatory arbitration is employed as the court plays no role in adjudicating the merits of the case. The court in *Cruz* continued, stating that, "[o]nce the arbitration panel has made its award, the parties must accept or reject the award in its entirety. If none of the parties file a notice of rejection of the award and request to proceed to trial within the time specified under the rules, the circuit court has no real function beyond entering judgment on the award." *Id.* As this court explained in *Babcock*, a failure to timely reject an arbitration award generally bars a party from later contesting the award at all in the interest of conserving judicial and private resources, which the mandatory arbitration program was intended to provide. *Babcock*, 2012 IL App (1st) 111090, ¶ 17.

¶ 30    Nevertheless, based on a fair reading of *Babcock*, it would be incomplete to say that plaintiff had no available recourse beyond rejection, where he had the option of seeking to vacate the award after judgment in the circuit court. See *id.* ¶ 26. In *Babcock*, this court found that the circuit court correctly entered judgment on an award even though the award was obviously over the monetary limit. *Id.* ¶ 20. This court noted that the arbitration award was properly entered because defendant failed to reject the award or otherwise properly raise the issue. *Id.* ¶¶ 26-27, 30. We additionally noted that any arguments pertaining to the validity of the award could have been brought up in a postjudgment petition. *Id.* ¶ 20. Like the defendant in *Babcock*, plaintiff not only failed to timely reject the award but also failed to raise the issue in a postjudgment petition. As such, we find that the circuit court did not err in entering judgment on the award and we do not reach plaintiff's claim of entitlement to a greater award under the Chicago Municipal Code. Accordingly, we affirm the circuit court's order entering judgment on the award of $10,600.

¶ 31                                              III. CONCLUSION

¶ 32          For the reasons stated, we affirm the judgment of the circuit court.

¶ 33          Affirmed.