2021 IL App (2d) 200306-U
No. 2-20-0306
Order filed May 26, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 11-CH-416 |
| | ) | |
| THERESE M. CROWLEY, CHASE BANK, | ) | |
| N.A., and UNKNOWN OWNERS AND | ) | |
| NONRECORD CLAIMANTS, | ) | |
| | ) | Honorable |
| Defendants | ) | Luis A. Berrones |
| | ) | Stacey L. Seneczko, |
| (Therese M. Crowley, Defendant-Appellant). | ) | Judges, Presiding |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Schostok and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's entry of summary judgment in favor of plaintiff.

¶ 2    In January 2011, plaintiff, Wells Fargo Bank N.A., filed a complaint to foreclose and reform a mortgage it held on defendant, Therese Crowley's, residence in Deerfield. Defendant filed affirmative defenses and amended counterclaims, alleging, in pertinent part, plaintiff lacked standing and committed "fraudulent misrepresentation," "fraud by inducement," and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815

ILCS 505/1 *et seq.* (West 2010)). The parties extensively litigated various issues in the case, most of which consisted of discovery disputes, and, in June 2019, the circuit court entered summary judgment in favor of plaintiff on all claims. The residence was sold at a sheriff's sale and, on February 19, 2020, the court entered its final judgment confirming the report of sale and distribution, granting possession to plaintiff, and entering an *in rem* deficiency judgment.

¶ 3        Defendant appeals, contending the entry of summary judgment should be reversed because there existed genuine issues of material fact as to whether (1) she was in default; (2) plaintiff had standing to foreclose the mortgage; (3) plaintiff proceeded with the foreclosure after having received what appeared to be a default reimbursement check from the Federal National Mortgage Association (Fannie Mae); and (4) plaintiff wrongfully denied her application to modify her loan under the Home Affordable Modification Program (HAMP). Additionally, she contends plaintiff wrongfully delayed and obstructed her discovery requests, which led to the circuit court's failure to enforce its own discovery orders and improper preclusion of further discovery. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5                                A. Basic Historical Facts

¶ 6        On May 19, 2005, defendant executed an adjustable-rate note under which she borrowed $205,000 from Woodfield Planning Corporation and, in exchange, granted to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Woodfield, a mortgage on her residence in Deerfield. The note provided for interest-only payments, in the amount of $982.30, until June 2012, at which time the interest-rate would change and defendant would be required to begin making principal and interest payments. The mortgage provided MERS was the mortgagee under the mortgage and was acting solely as nominee for Woodfield and its successors and assigns.

¶ 7        Woodfield executed an endorsement allonge and attached it to the note, indorsing the note

to Ohio Savings Bank. Ohio Savings Bank, in turn, indorsed the note in blank. In May 2006, plaintiff took possession of the note and began servicing the loan on behalf of Fannie Mae, which had invested in the note.

¶ 8    In 2009 and 2010, defendant, due to financial difficulties, sought several permanent modifications to her mortgage under the HAMP program. During that time period, defendant did not pay the April 2010 mortgage payment and failed to pay property taxes and insurance premiums in 2009 and 2010. In March 2010, she executed a forbearance agreement, which was intended to permit her additional time to bring the loan current or obtain a modification. The agreement provided defendant was to pay reduced monthly payments of $491.16 for the months of May, June, and July 2010, and, in August 2010, a balloon payment of $17,360.37, which represented the past-due payments and accrued charges, to bring the loan current. The agreement included certain terms and conditions, including, among others, (1) payments were to be made strictly in accordance with the payment schedule; (2) upon completion of the agreement, the loan had to be brought current or other arrangements made to satisfy the arrearage due under the loan; (3) plaintiff was under no obligation to enter into any further agreement; (4) the agreement did not constitute a waiver of plaintiff's right to insist upon strict performance in the future; and (5) all provisions of the note and mortgage remained in full force and effect and plaintiff, at its option, could institute foreclosure proceedings thereunder without regard to the agreement.

¶ 9    Defendant paid the May, June, and July installments and, in August 2010, plaintiff offered her a permanent Fannie Mae-approved non-HAMP modification. The proposed loan modification capitalized (that is, added to the principal balance due) an additional $23,903.29, which consisted of six months of interest payments, totaling $5893.75, and escrow-related charges, totaling $18,500.71, less $491.17, which was in defendant's suspense account. The escrow-related charges

consisted of a $14,141.99 escrow shortage, $3921.27 for a property-tax payment due in August 2010 before the effective date of the modification, and $437.45 for an insurance premium due in November 2010. (Defendant took issue with the capitalized amount included in the proposed modification.) The proposed modification required defendant to make a principal-and-interest payment of $1063.38 per month.

¶ 10     Defendant did not accept the proposed modification, and, on September 5, 2010, plaintiff sent to her a notice of acceleration, informing her that, unless she brought her loan current by October 5, 2010, all sums due under the note would become due. Defendant did not bring her loan current, leading to the following proceedings.

¶ 11     On January 24, 2011, MERS executed an assignment of the mortgage, which was recorded on February 16, 2011, assigning the mortgage to plaintiff.

¶ 12                                B. Procedural History

¶ 13                1. Complaint, Answer, Affirmative Defenses, and Counterclaims

¶ 14     On January 25, 2011, plaintiff filed a complaint to foreclose the mortgage, alleging it was the current mortgagee and held the indebtedness. It further alleged defendant defaulted on the note by failing to make the monthly payment due on April 1, 2010, and there remained an outstanding principal balance of $205,000. Plaintiff attached to its complaint a copy of the note and mortgage. In addition, due to an apparent scrivener's error in the legal description on the mortgage, it sought reformation of the mortgage to include the correct legal description, which it also attached.

¶ 15     In March 2011, defendant answered the complaint and asserted affirmative defenses and counterclaims. In her answer, she admitted the allegation in plaintiff's complaint that the copies of the note and mortgage attached to the complaint were "true cop[ies]." She also alleged she had insufficient knowledge to either admit or deny plaintiff's allegation that she was in default. She

did not include with her complaint an affidavit attesting to her want of knowledge (see 735 ILCS 5/2-610(b) (West 2010)).

¶ 16    In her affirmative defenses, defendant alleged plaintiff lacked standing because Woodfield was named as the lender and mortgagee on the face of the note and mortgage and plaintiff "offer[ed] no Lake County recording or any other evidence to show an Assignment or other document recognized under Illinois Law that confer[red] standing upon Plaintiff." She also alleged plaintiff had "unclean hands" in bringing the complaint, which warranted dismissal. Specifically, defendant asserted plaintiff engaged in a course of conduct related to several requests for modification, during which plaintiff improperly handled her requests, made misrepresentations to her in doing so, relied on incorrect and erroneous data in denying her modification requests, withheld a modification offer on more favorable terms than what plaintiff actually offered her, and ultimately forced her into foreclosure. Based on the described course of conduct, she also asserted plaintiff committed common law fraud and negligence and violated the Consumer Fraud Act.

¶ 17    Plaintiff moved to dismiss defendant's affirmative defenses and counterclaims. The court granted the motion in part, which left remaining defendant's affirmative defense that plaintiff lacked standing and her claims under the Consumer Fraud Act and of common-law fraud.

¶ 18           2. Defendant's Initial Discovery Requests and Related Litigation

¶ 19    In November 2011, while plaintiff's motion to dismiss was pending, defendant issued written discovery to plaintiff. The court ordered plaintiff to respond by June 19, 2012, but subsequently granted plaintiff several extensions of time before, on August 9, 2012, ordering a final extension for plaintiff's response. On August 24, 2012, defendant moved to compel plaintiff's responses, and, on September 21, 2012, plaintiff moved for the entry of a protective order to protect allegedly sensitive information it would produce in response to defendant's written discovery. On

April 24, 2013, the court granted in part each of the motions and set a final deadline for plaintiff to respond to defendant's written discovery. More than a year later, on May 2, 2014, the court entered an order, which stated, "Discovery is complete," and plaintiff had complied with its April 24, 2013, order disposing of the motions. (The May 2, 2014, order stated a prior order was entered on April 13, 2013, but our review of the record shows it was entered on April 24, 2013).

¶ 20                    3. Mediation and Amended Counterclaims

¶ 21    On August 22, 2014, the court granted defendant leave to file amended counterclaims and also ordered the parties to engage in mediation. On August 28, 2014, defendant filed her amended counterclaims, which consisted of 283 paragraphs and 21 exhibits, asserting claims of fraudulent misrepresentation and inducement, violations of the Consumer Fraud Act, and negligent infliction of emotional distress. Succinctly stated, defendant alleged she began experiencing financial hardship in late 2008 and 2009 and, as of March 2009, she was unable to perform her professional duties as a real estate broker due to physical limitations. Thus, in April 2009, she contacted plaintiff and requested information regarding a loan modification both under HAMP and not. Over the next several months, defendant applied for modifications on four separate occasions, in August 2009, November 2009, March 2010, and May 2010, all of which were denied. She alleged that, throughout the process, plaintiff deliberately relied on erroneous data and made several false statements of material fact as to the reasons for the denials, all of which was aimed at causing her to lose the opportunity to obtain a modification and forcing her into foreclosure. In addition, she alleged plaintiff induced her into entering the forbearance agreement in April 2010 by promising her it would result in a more favorable modification option at its completion, but, by the time it did so, it had informed Fannie Mae the property had a projected foreclosure date of April 1, 2010, and then, on April 22, 2010, received a $114,716.64 check from Fannie Mae "pursuant to the

foreclosure of [her] property." Further, she alleged that, at the conclusion of the forbearance agreement, with which she had fully complied, plaintiff offered her a loan modification that required a higher monthly payment than she had before she sought modification and concealed from her a more favorable modification offer which had been extended by Fannie Mae. As for relief, defendant sought rescission of the mortgage and monetary damages.

¶ 22    On May 26, 2015, the court ordered the parties to exchange settlement proposals, select a mediator, and schedule mediation within 28 days. On September 4, 2015, the court struck the mediation order on defendant's motion and ordered plaintiff to answer or otherwise plead to defendant's amended counterclaim on or before October 2, 2015.

¶ 23    On January 26, 2016, after a hearing, the court granted plaintiff's motion to dismiss defendant's amended counterclaim for negligent infliction of emotional distress and struck her request for rescission.

¶ 24    4. Defendant's April 2016 Motion to Compel and Supplemental Discovery Requests

¶ 25    On April 14, 2016, defendant moved to compel plaintiff to comply with her discovery requests, alleging that, in June 2015, it served plaintiff with notices of deposition, to which plaintiff responded it would not produce the employees because discovery was closed pursuant to the court's May 2, 2014, order.

¶ 26    On June 10, 2016, after a hearing, the court denied defendant's motion to compel and ordered her to seek leave of court before seeking any additional discovery. Accordingly, she sought leave to issue supplemental interrogatories and requests to produce documents and depose plaintiff's chief executive officer. On September 27, 2016, the court denied defendant leave to depose plaintiff's chief executive officer, granted her leave to issue supplemental written discovery, and ordered plaintiff to answer it within 28 days.

¶ 27                    5. Plaintiff's Motion for Summary Judgment

¶ 28    On November 3, 2016, plaintiff moved for summary judgment on its complaint and defendant's remaining affirmative defense (alleging plaintiff lacked standing) and amended counterclaims. Plaintiff alleged it acquired the mortgage and servicing rights in 2006, since which time it had also held the note and serviced the loan on behalf of Fannie Mae. In 2009, defendant submitted a loss-mitigation application, which was denied on October 27, 2009, because, after review, (1) the net present value of her loan if modified was $34,087 less than the net present value if not modified; (2) the loan to value ratio of her loan was approximately 62%; and (3) her debt coverage ratio was 1.28, which was higher than the threshold of 1.20.

¶ 29    Plaintiff further alleged defendant reapplied for a modification, which was again denied on December 3, 2009. In regard to this denial, plaintiff calculated defendant's income (which included income from her live-in boyfriend, who was contributing to the household) and monthly expenses using documents she submitted and a credit report. Based on the materials submitted, plaintiff determined defendant did not qualify for a modification because her debt-to-income ratio was well below the required threshold and her debt-coverage ratio exceeded the threshold.

¶ 30    Plaintiff also alleged defendant applied for a third modification, which was denied in early March 2010. In regard to this application, plaintiff reviewed defendant for a permanent modification and, using the materials she submitted verifying her monthly income and expenses, determined she would have a monthly income deficit of $60.82, rendering her unable to afford a modification. Plaintiff nevertheless asked Fannie Mae for an exception but Fannie Mae declined. Two weeks later, plaintiff again reviewed defendant's application, this time with updated financial information she provided. Plaintiff evaluated defendant for a HAMP modification but, on March 15, 2010, determined she failed to qualify because the net present value of the loan if not modified

exceeded the net present value if modified by $5,935. At that time, however, plaintiff offered defendant a temporary forbearance agreement, which required three reduced monthly payments and a balloon payment to bring the loan current. Defendant executed the agreement.

¶ 31    Further, plaintiff alleged, on August 2, 2010, defendant "was re-reviewed and qualified for a Fannie Mae modification that resulted in a post-modification principal-and-interest payment of $1063.38. The proposed modification capitalized an additional $23,903.29, which consisted of interest arrearages that began to accrue earlier in 2010 and escrow charges that began to accrue at the end of 2009 when defendant failed to pay her property taxes and homeowner's insurance. Plaintiff offered the proposed modification to defendant, but defendant did not accept it and it was withdrawn.

¶ 32    Finally, plaintiff alleged defendant failed to make the monthly payment due on April 1, 2010, and, at the time it filed its complaint, "[defendant's] loan was due under the terms of the Note and Mortgage for the April 1, 2010[,] payment for outstanding principal balance totaled $205,000.00[,] plus interest and other charges due under the terms of the Note and Mortgage." It further alleged that, as of September 9, 2016, defendant owed $329,993.77 and interest continued to accrue at the rate of $19.66 per day.

¶ 33    Plaintiff asserted it was entitled to judgment on both counts of its complaint (foreclosure and reformation). It noted there was no dispute that, under the plain terms of the note and mortgage, defendant was obligated to pay all amounts due and owing as of April 1, 2010, but had not done so. It argued reformation was proper because the parties intended to encumber defendant's property but, due to a scrivener's error in the legal description, the mortgage failed to reflect that intent.

¶ 34    Plaintiff also contended it was entitled to judgment on defendant's standing defense,

arguing it obtained physical possession of the original, blank-indorsed promissory note before it filed the complaint, which gave it standing to foreclose. Moreover, it asserted the fact it attached a copy of the note to the complaint was *prima facie* evidence that it owned the note, and, in her answer to the complaint, defendant failed to deny plaintiff was the holder of the note and judicially admitted the copy attached to the complaint was a "true copy," which obviated its need to submit proof on the issue.

¶ 35 Turning to defendant's amended counterclaims for common-law fraud and fraudulent inducement, plaintiff argued it was entitled to summary judgment, where defendant was unable to show it made any deliberate misrepresentation of material fact because the modification denials and the offered forbearance agreement and modification were proper under the relevant guidelines. With respect to the $114,716.64 check it received from Fannie Mae in April 2010, plaintiff argued defendant's assertion the payment was intended to pay off her loan in some way was nonsensical given Fannie Mae, as investor, was the ultimate economic beneficiary of the loan. In any event, it alleged only $150 of the check was applied to defendant's account and the remainder was applied to other accounts, a fact it supported with Michael Dickhaut's affidavit.

¶ 36 6. Motions to Compel and For Sanctions Regarding Supplemental Discovery Requests

¶ 37 Defendant did not immediately respond to plaintiff's motion for summary judgment; rather, over the next several months, she moved to compel plaintiff's responses to the supplemental discovery, none of which were fully successful. Ultimately, on March 12, 2018, defendant retained new counsel, and the court granted defendant leave to file a new discovery motion. On June 15, 2018, defendant filed a "petition for rule to show cause" (later treated by the parties and court as a motion for discovery sanctions), alleging, on November 3, 2017, plaintiff executed and served an affidavit of completeness of production (see Ill. S. Ct. R. 214(c) (eff. July 1, 2014)), but had not,

in fact, produced all responsive documents in its possession and failed to answer certain interrogatories and answer others truthfully.

¶ 38    On December 7, 2018, the court held a hearing on the petition, at which defendant stated the major issue with which she was concerned was plaintiff's receipt of a $114,716.64 check from Fannie Mae that was reflected in some of the documents she received in discovery. (She stated she was not conceding her objections to plaintiff's other, purported deficient discovery responses, but stated she was "not going to proceed on [the petition] any further" and would stand on her written submissions.) On that issue, plaintiff answered the supplemental interrogatories by stating, "A portion of [the check] ($150.00) was applied to [defendant's account] to reimburse [plaintiff] for expenses in connection with its participation in the Hope Now Project." Defendant asserted plaintiff failed to explain how the Hope Now Project had any relationship with her loan and refused to identify who requested the check and explain how it applied to the loan. At the hearing, the court noted plaintiff submitted to Fannie Mae a bulk request for Hope Now Program reimbursements and received a large payment, of which only $150 was applied to defendant's account. Defendant responded she disputed this explanation because plaintiff did not identify to which other loans the remainder of the check was applied. Defendant explained she believed Fannie Mae issued the check to plaintiff to reimburse it for the defaulted mortgage. The court denied the petition, finding plaintiff's sworn response that $150 was applied to the account to reimburse plaintiff for expenses in connection with the Hope Now Program fully answered the question.

¶ 39    In addition, plaintiff noted defendant had disputed whether it had possession of the original note and had offered on numerous occasions to allow defendant to inspect the original. Plaintiff tendered the note to the court, and the court stated it had been tendered "what appears to be an

original executed *** adjustable rate note, dated May 19th, 2005, and for a loan amount of $205,000[,] that appears to be signed by [defendant, an] endorsement allonge to the note in favor of *** Woodfield Planning Corporation, an assignment of mortgage, and what appears to be an original mortgage with an original signature of [defendant]." The court offered defendant the opportunity to inspect it, and defendant stated she would make arrangements with plaintiff to inspect the original note. The court's written order stated, "Plaintiff tendered the original Note and Mortgage in open Court for inspection by Defendant."

¶ 40        7. Defendant's Response to Plaintiff's Motion for Summary Judgment,
                  Plaintiff's Motion for Judgment of Foreclosure, and
         Defendant's Response to Plaintiff's "Multiple Motions for Summary Judgment."

¶ 41    On February 21, 2019, defendant filed her response to plaintiff's motion for summary judgment. The response contained no opposing statement of material facts as required by local rule 2-1.04(B)(3) (19th Judicial Cir. Ct. R. 2-1.04(B)(3)). She purportedly attached several exhibits, including her own affidavit, with attached documents she received in the course of discovery and from certain third parties, the affidavit of Elizabeth Jacobson (a retained expert), and an "Annotated Wells' Answer to Crowley's Counterclaims." Except for two documents, one page of the process notes related to the loan and another unidentified document relating to the Hope Now Program check, the record does not contain any of the attachments to defendant's response.

¶ 42    In her response, defendant argued she was not in default as plaintiff alleged because, as of April 1, 2010, she "was current on her mortgage payments *** under [the] Forbearance Agreement." Further, she asserted, plaintiff failed to send and she did not receive a notice of acceleration while she was engaged in loss mitigation. She also maintained, as set forth in Jacobson's affidavit, plaintiff misrepresented her available modification options, fraudulently handled certain calculations on her modification applications, and misrepresented communications

received from Fannie Mae. She also contended plaintiff's discovery responses raised questions of material fact, specifically, the issue of the Hope Now Program reimbursement check, which she dubbed as "the mystery reimbursement check." Defendant claimed the $114,716.64 check "represent[ed] 50% of [the] claimed value of the property on [plaintiff's] books" at the time of the alleged default, which was "the same amount that would be paid on reimbursement for a defaulted loan in foreclosure." She also argued plaintiff may have produced "manufactured" documents in discovery to substantiate its claim she was ineligible for a HAMP modification. Finally, with respect to her amended counterclaims, she argued "[t]he material fact questions which remain to be resolved by trial *** are legion," as demonstrated by the "Annotated Wells' Answer to Crowley's Counterclaims" attached to her response.

¶ 43    The next day, defendant filed a "confirmation of disclosure of expert witness," in which she stated she had previously disclosed Jacobson as a retained expert and was now confirming Jacobson was "a controlled expert witness," whose opinions were set forth in the affidavit and report attached to her response to the motion for summary judgment.

¶ 44    Plaintiff filed its reply in support of the motion for summary judgment and moved to strike Jacobson's affidavit and expert report.

¶ 45    Through additional counsel, plaintiff also moved, on March 26, 2019, for judgment on its claim for reformation of the mortgage and "for entry of judgment of foreclosure and sale" and filed an updated affidavit of amounts due and owing, in which Kimberly Mueggenberg averred (1) plaintiff acquired servicing rights for the loan from Ohio Savings bank on May 1, 2006, (2) plaintiff had possession of the note, which was indorsed in blank, and (3) the amount due and owing as of February 2019 was $374,829.20 and that interest would continue to accrue at the rate of $28.08 per day.

¶ 46    On April 3, 2019, the court entered set a briefing schedule on "the second motion for summary judgment." (The record contains only one motion for summary judgment. Presumably, the "second motion for summary judgment" referred to was plaintiff's motion for entry of judgment of foreclosure and sale.) Defendant responded to the motion and, in support, attached her own affidavit, which purportedly attached several exhibits. (The record does not contain the exhibits.) In her affidavit, defendant averred she was not in default on April 1, 2010, because she had entered into the forbearance agreement and was current on those payments. She also identified what she perceived as discrepancies in plaintiff's various filings and exhibits. She also certified, "on information and belief," the documents she was using to support her assertions were produced, obtained, or retained throughout the course of this litigation over which she had retained custody and control. In her response, she argued "there are myriad fact issues under the Amended Counterclaims requiring resolution at trial," which she had identified in her original affidavit and its attached exhibits.

¶ 47        8. Hearing on the Motion for Summary Judgment and Trial Court's Ruling

¶ 48    On June 7, 2019, the court held a hearing on plaintiff's motion for summary judgment. During the hearing, the court asked defendant why she had not filed an opposing statement of facts as required by local rule 2-1.04. Defendant responded, "I have no response." The court granted the motion, finding defendant had failed to establish a genuine issue of material fact on plaintiff's claims or her counterclaims. In doing so, it noted defendant's affidavit was "heavily based on testimony that is on information and belief[,] which is improper for an [a]ffidavit and, therefore, d[id] not raise any genuine issues of material facts with respect to those matters." Further, it found the documents attached to defendant's affidavit were unauthenticated and lacked any foundation, rendering them inadmissible and incapable of consideration at the summary judgment stage.

Further, it noted defendant's affidavit was conclusory, failed to provide sufficient factual testimony, and failed to raise genuine issues of material fact. With respect to Jacobson's affidavit, the court found Jacobson was not timely disclosed by defendant because her opinions were disclosed for the first time in defendant's response, and, in any event, her affidavit failed to provide the factual support for her opinions, which is required when an expert-witness affidavit is used in motion practice. It also noted Jacobson's affidavit suffered from the same deficiencies as defendant's affidavit, in that it had several documents attached but "little reference as to how a specific document support[ed] the point[s] being made." Finally, it found plaintiff had failed to answer plaintiff's statement of facts in compliance with local rule 2-1.04(B)(3), and, therefore, the facts set forth in plaintiff's statement were deemed admitted.

¶ 49    The court also entered an order granting plaintiff judgment on its claim for reformation and a judgment for foreclosure and sale, which included a money judgment in the amount of $377,579.20 and an order directing the sheriff to sell the residence at auction.

¶ 50        9. Defendant's Motion to Reconsider the Summary Judgment Order,
        Plaintiff's Motion to Confirm Report of Sale and Distribution and the Final Judgment

¶ 51    Defendant thereafter moved to "vacate" the summary judgment order, arguing (1) she was not in default on the loan on April 1, 2010; (2) the summary judgment order "prevent[ed] resolution of the fact question whether the $114,716.64 payment was really all related to [defendant's] account and why"; and (3) defendant was fraudulently prevented from obtaining a permanent loan modification. She further argued the documents she relied upon were "self authenticating" and the court had "exalted form over substance" by granting plaintiff's motion. In addition, she argued the summary judgment order had the effect of "cutting off [her] opportunity to proceed with final discovery," including depositions of plaintiff's newly disclosed affiants.

¶ 52    On September 10, 2019, the residence was sold at public auction, at which time plaintiff

purchased the residence at a bid of $221,100. Plaintiff thereafter moved to confirm the report of sale and distribution, for possession, and for an *in rem* deficiency judgment.

¶ 53    On February 19, 2020, the court denied defendant's motion to reconsider its summary judgment order and granted plaintiff's motion to confirm, for possession, and *in rem* deficiency. Defendant moved to reconsider the order granting plaintiff's motion. The court denied the motion, and this appeal followed.

¶ 54                                    II. ANALYSIS

¶ 55    On appeal, defendant contends the circuit court erred in granting summary judgment in plaintiff's favor. Specifically, she argues there existed genuine issues of material fact as to whether (1) she was in default; (2) plaintiff had standing to foreclose the mortgage; (3) plaintiff proceeded with the foreclosure after having received the $114,716.64 check, which appeared to be a default reimbursement check from Fannie Mae; and (4) plaintiff wrongfully denied her application to modify her loan under HAMP. Additionally, she contends plaintiff wrongfully delayed and obstructed her discovery requests, which led to the circuit court's failure to enforce its own discovery orders and improper preclusion of further discovery.

¶ 56    Plaintiff responds the circuit court's entry of summary judgment was proper. First, it argues defendant failed to comply with local rule 2-1.04 by presenting an opposing statement of material facts, which resulted in all the facts set forth in its statement of material facts being deemed admitted. Second, it contends the affidavit plaintiff submitted in support of her response to its motion for summary judgment failed to comply with Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013). Third, it asserts summary judgment was proper because there existed no genuine issues of material of fact as to (1) its standing, (2) defendant's default, and (3) defendant's counterclaims.

¶ 57    We agree with plaintiff's contentions that defendant's failure to comply with the local rule and Rule 191 justified summary judgment in its favor. In addition, we find the record is insufficient to resolve the parties' arguments with respect to Rule 191. In any event, even if we were to overlook defendant's failures to comply with those rules, we find the circuit court correctly entered judgment in plaintiff's favor where there existed no genuine issue of material fact on its complaint or defendant's affirmative defense and amended counterclaims.

¶ 58                    A. Defendant's Compliance with Rule 341

¶ 59    Before beginning our analysis, we must comment on defendant's failure, in numerous instances, to comply with Illinois Supreme Court Rule 341(eff. Oct. 1, 2020), which governs the form and content of appellate briefs. For instance, many facts set forth in plaintiff's statement of facts contain citations to the record which do not support the asserted fact, contain no citation to the record at all, or are plainly belied or rebutted by the record. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Her brief and reply brief are almost entirely devoid of any citation to authority, and many of the points she argues are not supported by citation to any authority. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). And, even when she does cite authority, she sets forth no explanation of why that authority supports her position and, in some instances, sets forth conclusory arguments which are not sufficiently developed.

¶ 60    It is well settled this court is not a depository into which a party may dump the burden of argument or research, and we will not comb the record on behalf of a party to find the facts which support his or her arguments. *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶¶ 13, 15. Compliance with Rule 341 is mandatory. *Id.* ¶ 7. The purpose of the rule is to present to the reviewing court with clear and orderly arguments so that we can properly ascertain and dispose of the issues involved. *Id.* "Strict adherence to the requirement of citing relevant pages of the

record is necessary to expedite and facilitate the administration of justice." *Maun v. Department of Professional Regulation*, 299 Ill. App. 3d 388, 399 (1998). That purpose is even more important when, as here, the record is voluminous; indeed, the common-law record in this case contains nearly 6000 pages. We depend largely on the parties to accurately and fairly state the facts so that we may expeditiously decide the issues presented. Here, defendant often disregarded the rule and its purpose and, though we have not stricken defendant's briefs even though it would be well within our authority to do so (*Hall*, 2012 IL App (2d) 111151, ¶¶ 7, 15), we admonish defendant's counsel and caution him that future noncompliance with the rule may result, in addition to forfeiture of the issues presented, in an order striking the brief and/or dismissing the appeal.

¶ 61                    B. Local Rule 2-1.04 and Illinois Supreme Court Rule 191

¶ 62    Plaintiff contends defendant failed to comply with local rule 2-1.04, and her failure to do so justified entry of judgment in its favor. We agree.

¶ 63    A circuit court may adopt local rules governing civil proceedings provided they are consistent with the supreme court rules and state statutes. Ill. S. Ct. R. 21(a) (eff. Jan. 1, 2021). As this court recognized in *Dancor Construction, Inc. v. FXR Construction, Inc.*, 2016 IL App (2d) 150839, ¶ 39, "Local rules are meant to be followed and are not mere suggestions or guidelines. Rather, they have the force of statutes and are binding on the courts and parties."

¶ 64    The circuit court of Lake County has adopted a rule governing motions for summary judgment. 19th Judicial Cir. Ct. R. 2-1.04. The rule provides, in pertinent part, a party moving for summary judgment "*shall* serve and file" with its motion a statement of material facts as to which the moving party contends there is no genuine issue and entitles the moving party to judgment. (Emphasis added.) 19th Judicial Cir. Ct. R. 2-1.04(A)(3). The statement of material facts must consist of short numbered paragraphs, including within each paragraph specific references to

affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in each paragraph. *Id.* The rule also provides a party opposing a motion for summary judgment "*shall* serve and file" a concise response to the moving party's statement, which "*shall*" contain a response to each numbered paragraph, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting material relied upon. (Emphases added.) 19th Judicial Cir. Ct. R. 2-1.04(B)(3)(a). If the nonmoving party wishes to submit additional facts that require the denial of summary judgment, its response must include short numbered paragraphs setting forth those facts with reference to the affidavits, parts of the record, and other supporting materials relied upon. 19th Judicial Cir. Ct. R. 2-1.04(B)(3)(b). The rule also states, "All facts set forth in the statement required of the moving party *will be deemed to be admitted unless controverted by the statement of the opposing party*." (Emphasis added.) *Id.*

¶ 65    Here, plaintiff submitted with its motion for summary judgment a statement of material facts which complied with the local rule. Defendant, however, failed to submit with her response a statement which complied with the rule. When asked by the circuit court about this failure at the hearing on the motion, defendant responded, "I have no response." By reason of her failure to comply with the rule, all material facts set forth in plaintiff's statement were deemed admitted. 19th Judicial Cir. Ct. R. 2-1.04.

¶ 66    Defendant acknowledges her failure to comply with the rule and concedes, "the Court was fully justified in relying on its local Rule requiring [defendant] to submit a proposed statement of facts." Citing *Babcock v. Wallace*, 2012 IL App (1st) 111090, ¶ 23, she nevertheless argues the court was required "to make a reasoned inquiry as to whether substantial justice [wa]s being done between the litigants." Further, she argues "strict compliance with local rules should not be considered of such overriding importance as to deprive good faith litigants of having their

substantive case heard before the courts," especially when a major financial institution with unlimited resources is at "battle" with a hard-working citizen like her. She maintains the court essentially elevated form over substance and deprived her right to equal justice. We are not persuaded.

¶ 67    First, we note the portion of *Babcock* on which defendant relies provides no support for her position. That portion of *Babcock* merely set forth the standard of review and the considerations a trial court must make before determining whether to grant a posttrial motion under section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2010)). See *id.* Second, as even defendant points out, local rules serve an important purpose, in this case, to streamline summary judgment proceedings so the court may determine the essential question presented by such a motion—whether there existed any genuine issue of material fact which would bar plaintiff's right to judgment as a matter of law. As noted, local court rules have the effect of statute, are meant to be followed, and are binding upon the court and the parties. *Dancor*, 2016 IL App (2d) 150839, ¶ 39. Even were we to accept at face value defendant's argument regarding the disparity of resources between the parties, that disparity of resources did not deprive her the opportunity to comply with the local rule. Rather, she was provided a full opportunity—indeed, plaintiff's motion and its accompanying statement of material facts were filed more than two years before she was required to respond to it—and she simply failed to do so. We decline to excuse defendant's blatant failure to comply with the rule based only on the alleged disparity between the parties.

¶ 68    Given the material facts set forth in plaintiff's statement of material facts were deemed admitted, we conclude the circuit court correctly entered judgment in plaintiff's favor. Indeed, defendant does not argue plaintiff's motion should have been denied for want of proof on any

material element of the claims in the complaint, affirmative defenses, or amended counterclaims. Accordingly, the circuit court properly granted summary judgment in plaintiff's favor.

¶ 69    In reaching our conclusion, we must also comment on the parties' arguments as to whether the materials defendant submitted in opposition to plaintiff's motion for summary judgment complied with Rule 191(a). Plaintiff argues defendant's submission in response to its motion for summary judgment failed to comply with Rule 191(a). Specifically, it contends the crucial assertions made in defendant's affidavit, including those relating to the authenticity and admissibility of the attached documentary evidence, were made "on information and belief," which is not permissible under Rule 191(a). Accordingly, plaintiff argues, the circuit court was correct in finding the affidavits were improper and it was unable to consider the documentary evidence attached to them.

¶ 70    Defendant responds the materials she submitted were sufficient to show a genuine issue of material fact existed to preclude summary judgment. She asserts she presented the circuit court "a printed compendium of extensive materials in response to [plaintiff's] multiple Motions for Summary [*sic*], inclusive of the exhibits to [her] affidavit," and "[t]hose exhibits include in forensic detail reference to [plaintiff's] documents, internal emails, and phone transcripts, *** Fannie Mae documents[,] and Lake County Recorder of Deeds documents, all of which substantiate the material facts supporting [her] claims."

¶ 71    We find the record is not sufficient to resolve the parties' arguments. As noted, the record does not contain the affidavit and attached exhibits defendant submitted in support of her response to plaintiff's motion for summary judgment. Nor does it contain the exhibits she attached to the affidavit she submitted in support of her response to plaintiff's motion for entry of judgment of

foreclosure and sale (which she refers to as her response to plaintiff's "multiple motions for summary judgment").

¶ 72    The appellant must present to the reviewing court an adequate record to review his or her claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). In the absence of such a record, the reviewing court must presume the order entered by the circuit court was in conformity with the law and had a sufficient factual basis, and any doubts arising from the incompleteness of the record will be resolved against the appellant. *Id.* at 392. We do not have an adequate record to review whether the affidavit defendant submitted in opposition to the motion for summary judgment or its attached exhibits complied with Rule 191(a) was sufficient to create a genuine issue of material fact precluding entry of summary judgment. Nor are we able to determine whether the documentary evidence submitted in support of the second response was sufficient to preclude summary judgment. And, while plaintiff appended to its brief the missing affidavit, we are unable to consider matters which are not of record. See *Kensington's Wine Auctioneers and Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 14 (2009). (Defendant was not without recourse in this regard and could have supplemented the record. See Ill. S. Ct. R. 329 (eff. July 1, 2017). However, despite being alerted to the fact the record did not contain the affidavit and despite it being her burden to present a sufficient record, she chose to fault plaintiff for failing to include the exhibits in its supplemental appendix instead of supplementing the record with her affidavit and its exhibits.) Accordingly, we must presume the circuit court's finding that the affidavit failed to comply with Rule 191(a) was correct. See *Foutch*, 99 Ill. 2d at 392.

¶ 73        C. The Circuit Court's Summary Judgment Order was Otherwise Correct

¶ 74    Defendant also argues the circuit court erred by entering summary judgment in favor of plaintiff where the record contained genuine issues of material fact on the issues of (1) her default,

(2) plaintiff's standing, (3) plaintiff's receipt of a $114,716.64 check as a "default reimbursement check," and (4) whether plaintiff properly denied her HAMP applications. We address each contention in turn.

¶ 75                                    1. Summary-Judgment Standards

¶ 76    Summary judgment is proper when the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). The procedure has been termed the "put up or shut up" moment in litigation, meaning the party opposing summary judgment must produce actual evidentiary facts that would enable a jury to return a verdict in his or her favor and may not rely on mere speculation or conjecture. *Tafoya-Cruz v. Temperance Beer Company, LLC*, 2020 IL App (1st) 190606, ¶ 68. "Although a drastic means of disposing of litigation, summary judgment is, nonetheless, an appropriate measure to efficiently dispose of a suit when the moving party's right to the judgment is clear and free from doubt." *U.S. Bank, National Ass'n as Trustee for Truman 2016 SC Title Trust v. Reinish*, 2020 IL App (2d) 190175, ¶ 10.

¶ 77    We review *de novo* whether summary judgment was proper and are free to affirm on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We must construe the materials submitted by the parties strictly against the moving party and liberally in favor of the nonmoving party. *Tafoya-Cruz*, 2020 IL App (1st) 190606, ¶ 55. We will not resolve questions of fact; our inquiry is limited to determining whether those questions exist. *Reinish*, 2020 IL App (2d) 190175, ¶ 10.

¶ 78                                              2. Default

¶ 79    Defendant contends the circuit court erred by entering summary judgment where the record presented a genuine issue of material fact on whether she was in default. Specifically, she argues she consistently maintained throughout the proceedings that plaintiff's allegations of default were false, noting she denied she was in default in her answer to the complaint, "sworn [c]ounterclaims," and "sworn response to Wells' Multiple Motions for Summary Judgment."[1] She argues she could not have been in default on April 1, 2010, as alleged in plaintiff's complaint, but does not explain why that is so.

¶ 80    Plaintiff argues there existed no genuine issue of material fact on the issue of default because the record contained no evidence other than defendant's own unverified allegations. Further, it argues Dickhaut's affidavit of amounts due and owing stated that unpaid interest had been accruing on defendant's loan at variable rates since March 1, 2010, and that defendant failed to make the April 2010 payment, which was confirmed by the documents attached to his affidavit.

¶ 81    We conclude there existed no genuine issue of material fact as to defendant's default. First, defendant's answer to the complaint stated she lacked the knowledge to either admit or deny plaintiff's allegation that she was in default because the loan was due for the April 1, 2010, installment payment. "A proper answer to a complaint must contain an explicit admission or an explicit denial of each allegation in the complaint." *Parkway Bank and Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 37 (citing 735 ILCS 5/2-610(a) (West 2010)). When a party fails to explicitly deny an allegation, the allegation is admitted unless (1) the allegation concerns damages, (2) the party states it lacks knowledge of the matter sufficient to form a belief and supports the

---

[1] Neither defendant's answer, amended counterclaims, nor response to the motion for summary judgment were verified. See 735 ILCS 5/2-605 (West 2018).

statement with an affidavit, or (3) the party has not had the chance to deny the allegation. *Id.* (citing 735 ILCS 5/2-610(b) (West 2010). When the defendant fails to explicitly deny a specific allegation in the complaint, that failure constitutes a judicial admission, obviating the plaintiff of its need to submit proof on the issue. *Id.* Indeed, an admission in an unverified pleading signed by an attorney is a binding judicial admission on which a party cannot create a factual dispute by later contradicting it in a motion for summary judgment or at trial. *Bank of New York Mellon v. Wojcik*, 2019 IL App (1st) 180845, ¶ 23; see also *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998).

¶ 82    Here, plaintiff's complaint alleged defendant defaulted on the note by failing to pay the monthly installments due and the loan was due for the April 1, 2010, payment. Rather than explicitly denying plaintiff's allegation, defendant asserted she "ha[d] insufficient knowledge to affirm or deny the allegation and demand[ed] strict proof thereof." She did not file with her answer an affidavit attesting to the truth of her statement she lacked sufficient knowledge. See 735 ILCS 5/2-610(b) (West 2018); *Korzen*, 2013 IL App (1st) 130380, ¶ 37. Accordingly, she judicially admitted plaintiff's default allegation, a binding admission she could not later contradict. *Wojcik*, 2019 IL App (1st) 180845, ¶ 23.

¶ 83    In any event, we find the evidentiary material plaintiff submitted in favor of its motion for summary judgment and the lack thereof submitted by defendant establishes there existed no genuine issue of material fact as to defendant's default. Plaintiff attached to its motion for summary judgment the affidavit of Michael Dickhaut, who averred interest had been accruing on defendant's loan at variable rates since March 1, 2010, which confirmed defendant failed to make the April 2010 payment because any interest that had accrued during March 2010 would have been due on April 1, 2010. Moreover, Dickhaut's affidavit laid a proper evidentiary foundation for the admission of the business records on which he relied and which were attached to his affidavit.

¶ 84    Defendant, on the other hand, failed to submit any evidentiary material, other than her own self-serving assertion she was not in default. As noted, the record does not contain the affidavit she submitted in support of her response to plaintiff's motion for summary judgment. But, in her second affidavit, she asserted she was not on default on April 1, 2010, because she entered the forbearance agreement "on which [she] was current in payment," citing to her affidavit submitted in her first response and an untitled document that contains an entry dated March 16, 2010, stating, "loan is current" without any further explanation. Though plaintiff does not dispute defendant made the May, June, and July 2010 payments under the forbearance agreement, that does not cast doubt on the fact she was in default on the loan as of April 1, 2010. By its terms, the forbearance agreement had no effect on her default; rather, it was offered to defendant as an opportunity to bring her loan current and rectify her default after making three reduced monthly payments (two of which were applied to her interest arrearages and the third held in a suspended account) and a balloon payment. Further, the agreement provided all provisions of the note and mortgage remained in full effect notwithstanding the agreement, and plaintiff retained the option to institute foreclosure proceedings without regard to the agreement. The record establishes defendant was in default on April 1, 2010. She did not bring the loan current at the conclusion of the forbearance agreement, and the parties failed to agree on a loan modification incorporating that deficiency. There existed no genuine issue of material fact as to her default.

¶ 85                          3. Standing

¶ 86    Defendant next contends the circuit court erred by entering summary judgment where the record presented a genuine issue of material fact as to plaintiff's standing to foreclose the mortgage. She argues plaintiff failed to establish it held a beneficial interest in the property at the time it filed the complaint. Further, she argues, without citation to authority, plaintiff failed to

show how it acquired the note and mortgage. Additionally, she asserts the assignment of mortgage, executed on January 24, 2011, and recorded on February 16, 2011, was "a false and fraudulent document." She asserts the assignment states it occurred on May 19, 2005, which was "impossible" because the allonge to the note "clearly state[d] that Woodfield directly transferred the note to Ohio Savings Bank in 2005" and further asserts "[a]ny proper transfer and assignment of the note and mortgage to [plaintiff] would necessarily come from Ohio Savings, and not *** Woodfield."

¶ 87    Plaintiff responds it attached a copy of the note to the complaint, which was *prima facie* evidence it owned the note and, when coupled with defendant's admission the note was a "true copy," was sufficient to prove its standing. Further, plaintiff maintains it had physical possession of the original note, which was indorsed in blank and was produced in open court, and, therefore, the record establishes it had standing to foreclose.

¶ 88    " 'The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit.' " *Deutsche Bank National Trust Co. v. Gilbert*, 2012 IL App (2d) 120164, ¶ 15 (quoting *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004)). Courts look to the point in time at which suit is filed to determine whether a party has standing to sue. *Id.* In the context of a suit to foreclose a mortgage, the mortgagee, *i.e.*, the holder of the indebtedness secured by the mortgage, or its agent or successor may bring the suit. *Id.* A party's lack of standing is an affirmative defense, and the party asserting it bears the burden of proof. *Id.*

¶ 89    We conclude there existed no genuine issue of fact as to plaintiff's standing to foreclose the mortgage. First, "[t]he mere fact that a copy of the note is attached to the complaint is itself *prima facie* evidence that the plaintiff owns the note." *Korzen*, 2013 IL App (1st) 130380, ¶ 24. In *Korzen*, we reaffirmed our long-standing interpretation of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.* (West 2010)), that a plaintiff must only attach a copy of the note and

mortgage to the complaint and need not produce the original note or any specific documentation demonstrating it owns the note or the right to foreclose on the mortgage. *Id.* ¶¶ 26-32.

¶ 90    Plaintiff attached to its complaint a copy of the note, its endorsement allonge, and mortgage and, therefore, submitted *prima facie* proof it had standing to foreclose the mortgage. Defendant failed to bring forth any evidence to rebut this *prima facie* proof and, in fact, admitted in her answer to the complaint the attached copies of the note and mortgage were "true cop[ies]." The endorsement allonge shows Woodfield indorsed the note to Ohio Savings Bank, which, in turn, indorsed the note in blank. "A note indorsed in blank is payable to the bearer." *U.S. Bank Trust National Ass'n for Queen's Park Oval Asset Holding Trust v. Hernandez*, 2017 IL App (2d) 160850, ¶ 18 (citing 810 ILCS 5/3-205(b) (West 2014)). The transfer of a note constitutes an assignment of the mortgage securing the debt, and, thus, the bearer of the note is deemed the mortgagee, who is authorized to bring foreclosure proceedings. *Id.* Michael Dickhaut's affidavit states plaintiff acquired possession of the blank-indorsed note on or about May 1, 2006, when it began servicing the loan. Accordingly, plaintiff was the bearer of the note and had standing to bring the foreclosure complaint. *Id.*

¶ 91    Moreover, though it was not required to do so, plaintiff produced the original note and mortgage in open court, which was memorialized by the court's December 7, 2018, order, which stated, "Plaintiff tendered the original Note and Mortgage in open Court for inspection by Defendant." Defendant failed to submit any evidence calling into question plaintiff's physical possession of the blank-indorsed note or otherwise question its validity. See *Korzen*, 2013 IL App (1st) 130380, ¶ 34. Accordingly, there existed no question of fact as to plaintiff's standing to foreclose, and, therefore, the court correctly entered judgment in favor of plaintiff on defendant's affirmative defense of standing.

¶ 92    In reaching this conclusion, we reject outright defendant's argument that, "since the Note was a bearer note, [plaintiff] did not meet its burden of proving when and how it acquired the Note and Mortgage if it did from Ohio Savings Bank, the true mortgagee." Not only has defendant failed to cite any authority in support of this argument, resulting in its forfeiture (*People v. Oglesby*, 2016 IL App (1st) 141477, ¶ 205), but plaintiff also was not required to prove how it acquired the note and mortgage. See *CitiMortgage, Inc. v. Sconyers*, 2014 IL App (1st) 130023, ¶ 11 ("Any issue regarding the *manner* in which CitiMortgage acquired the note does not affect its undisputed status as the holder." (Emphasis in original.)).

¶ 93    We also reject defendant's assertion "even the [circuit] Court recited the fact that Woodfield was the mortgagee at a hearing late in the case on December 7, 2019 [*sic*]," somehow proves plaintiff did not have standing. The note was indorsed in blank, and plaintiff's possession of it gave it standing to foreclose the mortgage. *Hernandez*, 2017 IL App (2d) 160850, ¶ 18.

¶ 94    Finally, we reject defendant's argument that MERS' assignment of the mortgage to plaintiff called into doubt plaintiff's standing. According to defendant, the assignment was "a false and fraudulent document" because any assignment of the mortgage would necessarily have come from Ohio Savings Bank, not MERS, as the note had been indorsed to Ohio Savings Bank. Defendant implies the transfer of the note affected MERS' status as the mortgagee and its attendant right to assign the mortgage. To be sure, the transfer of a note carries with it an equitable assignment of the mortgage by which the note is secured. *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 37. But the indorsement of the *note* to Ohio Savings Bank did not actually assign the *mortgage* to Ohio Savings Bank. MERS remained the mortgagee, and MERS could later assign the mortgage to plaintiff and did so.

¶ 95                            4. The $114,716.64 Check

¶ 96    Defendant next contends plaintiff's receipt of a $114,716.64 check, which is reflected in process notes of defendant's account, a mere 21 days after it told Fannie Mae the loan had a "projected foreclosure date" of April 1, 2010, created a factual issue to be resolved at trial. During discovery, plaintiff provided a sworn response to an interrogatory concerning the check which stated $150 of that check was applied to defendant's account as reimbursement for its participation in the Hope Now program in relation to the loan. Though her argument is not entirely clear on this point, she seems to argue plaintiff's failure to explain where the remaining funds from that check were applied created a factual issue to be resolved at trial. Her argument does not clearly state whether it is related to plaintiff's complaint or her counterclaims or how it would preclude entry of judgment. In any event, she merely speculates the check must have been a "default reimbursement for the alleged default on [defendant's] account" because (1) the check was approximately one half of the amount due on the loan, and (2) plaintiff failed to produce evidence, beyond conclusory assertions in its affidavits, that the check was in fact, a batch payment for the Hope Now program.

¶ 97    A party must present a cogent and cohesive legal argument in support of the issues he or she raised on appeal. *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010). The failure to present any cogent argument or cite relevant authority results in forfeiture of the issue. *Oglesby*, 2016 IL App (1st) 141477, ¶ 205.

¶ 98    Defendant has failed to adequately articulate why plaintiff's receipt of the check would preclude summary judgment in plaintiff's favor. Her argument does not make clear whether plaintiff's receipt of the check precluded a finding in favor of plaintiff on its complaint, her amended counterclaim, or both. It is, therefore, forfeited. *Id.* Further, to the extent she contends plaintiff's receipt of the check was, in fact, a "default reimbursement," she offers nothing more

than mere speculation based on the timing of the check and a statement in some unidentified and unauthenticated document stating her loan had a "projected default date" of April 1, 2010. On the other hand, plaintiff's motion for summary judgment and its subsequent answers to defendant's supplemental interrogatories establishes $150 of that check was applied to her account as reimbursement for fees in relation to the Hope Now program and that the remainder of the check was applied to other borrowers' accounts as reimbursement for same. Defendant's mere speculation is not sufficient to create a question of fact. *Tafoya-Cruz*, 2020 IL App (1st) 190606, ¶ 68.

¶ 99                    5. Defendant's Applications for Modification

¶ 100   Defendant next contends the circuit court erred by entering summary judgment where there exists a genuine issue of material fact with respect to whether plaintiff wrongfully denied her application to modify her loan under HAMP. She asserts, without any citation to authority or the record, she applied for and was entitled to a HAMP modification from plaintiff, the investor on her loan, Fannie Mae, in fact approved her for a modification to begin in May 2010, but plaintiff failed to communicate that approval and offer her the modification. She further asserts she filed a "motion to disclose" Jacobson as an expert witness, who would have "confirm[ed] that [defendant] was entitled to a HAMP modification," and the court erred in its denial of that motion. Further, she argues, even without Jacobson's opinion, "the Record in this case is replete with evidence that [defendant] was entitled to a HAMP modification" because plaintiff never produced the net present value reports it used to justify its denial of her HAMP applications "as required under Dodd-Frank." Accordingly, she contends, "[t]here is no rationale to [plaintiff's] repeated denials of [her] loan modification applications: Thus, the record in this case establishes the existence of a material

fact question of why [plaintiff] persistently denied [her] loan modification applications which the Court failed to recognize."

¶ 101   We reject defendant's argument. As noted, her entire argument on this point contains no citations to the record or pertinent authority. Further, she has not identified in the record any evidence showing she raised a factual question that she was entitled to a HAMP modification and she does not develop her argument on this point beyond her assertion plaintiff failed to produce the net-present-value reports "as required by Dodd-Frank." Such a conclusory argument does not satisfy Rule 341. *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 12. It is, therefore, forfeited. *Id.*

¶ 102   Second, plaintiff's argument with respect to Jacobson misstates the record. Defendant never moved to disclose Jacobson. Rather, she purportedly attached Jacobson's affidavit to her response to plaintiff's motion for summary judgment and then filed a document entitled "confirmation of Disclosure of Expert Witness." (We say she purportedly attached Jacobson's affidavit to her response because it is not included in the record on appeal.) Plaintiff then moved to strike the affidavit on various bases, which the circuit court granted. In any event, defendant's entire argument on this point is, "The Court erred in its denial of that motion [to disclose]." Again, this argument does not comply with Rule 341, and it is forfeited. *Hall*, 2012 IL App (2d) 111151, ¶ 12.

¶ 103                               D. Discovery Abuses

¶ 104   Defendant's final contention concerns what she contends were persistent abuses of the supreme court rules governing discovery. Other than a lengthy block quotation from *Mistler v. Mancini*, Ill. App. 3d 228, 232-33 (1982), explaining the purpose and scope of discovery, her entire argument is as follows:

"Throughout the lengthy discovery phase of this case, [defendant] was subjected to repeated violations of the basic rules of discovery. *** 

[block quotation]

[Plaintiff's] actions in obstructing and delaying the discovery process, extending the litigation for over [eight] years and requiring participation of [eight] circuit court judges, culminated in the failure of the Court to recognize and acknowledge the many key material fact issues that should have precluded the Court from entering the [s]ummary [j]udgments."

¶ 105   Defendant does not develop her argument or explain what conduct in this case constituted an abuse of the rules of discovery, how that purported abuse precluded her from developing a record necessary to rebut plaintiff's motion for summary judgment, or how it precluded the court from recognizing the purported factual questions which precluded summary judgment. This conclusory argument does not satisfy Rule 341 and is forfeited. *Hall*, 2012 IL App (2d) 111151, ¶ 12.

¶ 106                           III. CONCLUSION

¶ 107   For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 108   Affirmed.